UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 26-mj-00023 (PAM/DLM)

UNITED STATES OF AMERICA,

        Plaintiff,

v.

JULIO CESAR SOSA-CELIS,

        Defendant.

SOSA-CELIS'S RESPONSE TO MOTION TO REVOKE ORDER OF RELEASE ON CONDITIONS

## INTRODUCTION

Defendant Julio Cesar Sosa Celis opposes the Government's motion to revoke the order that he be released on conditions pending trial. Mr. Sosa Celis is not an immediate risk of flight. He is not a danger to the community such that detaining him is the only way to secure the interest in public safety. The Government's motion places great emphasis on the fact that an immigration detainer is in place and that Mr. Sosa Celis's release may be followed by his deportation. But the detainer has no bearing on the Court's detention analysis and, in any event, is a problem created by the Government itself. The Government urges the Court to stop the Department of Homeland Security from deporting Mr. Sosa Celis so that the Department of Justice may prosecute him. The Court should decline the Government's invitation to depart from well-established separation of powers principles and resolve an internal conflict of the executive branch. Indeed, the Government may drop the detainer at any time. Because the Government has not met its burden to show that no release condition or set of conditions will reasonably assure Mr. Sosa Celis's appearance

1

and the safety of the community, Mr. Sosa Celis respectfully asks the Court to deny the Government's motion and release him with conditions pending trial.

## PROCEDURAL HISTORY

On January 16, 2026, the United States charged Mr. Sosa Celis by criminal complaint with one count of aiding and abetting assault of a deportation officer of the U.S. Immigration and Customs Enforcement ("ICE") in violation of 18 U.S.C. §§ 2 and 111(a)(1). Doc. 1.

Following Mr. Sosa Celis's initial appearance on January 16, 2026, U.S. Magistrate Judge Douglas L. Micko held a preliminary and detention hearing on January 21, 2026. Doc. 10, 19. After hearing the testimony and cross-examination of the Government's witness, FBI Special Agent Terry Getsch,[1] Judge Micko found probable cause to support the charge. Doc. 19.

On the issue of detention, Judge Micko considered the evidence presented at the hearing and proffers of defense counsel together with the standards under the Bail Reform Act, 18 U.S.C. § 3142, and then ordered that Mr. Sosa Celis be released on specified conditions. Doc. 19, 22. Such conditions include: (1) submit to supervision by and report for supervision to the U.S. Probation and Pretrial Services Office; (2) not obtain any passport, visa, advanced parole document, refugee travel permit/reentry document, or other foreign travel document; (3) travel shall be restricted to Minnesota unless approved by the pretrial services office or supervising officer; and (4) avoid all contact, directly or

---

[1] Although SA Getsch was not the affiant in support of the complaint, he testified that he jointly wrote the affidavit with the affiant, SA Timothy Schanz.

indirectly, with any person who is or may be a victim or witness in the investigation, including those involved in immigration enforcement. Doc. 22.

The Government then requested a stay of the release order to file this appeal. Judge Micko granted the Government's request and this appeal and motion to revoke the order followed. Doc. 22, 24.

## FACTS

The facts of this case are hotly disputed. The following description of events is based on the testimony and evidence presented at the preliminary and detention hearing and the Pretrial Services Report.

Mr. Sosa Celis is a 24-year-old man who came to this country illegally to escape the violence and insecurity he faced in Venezuela. After he entered the U.S., he was granted Temporary Protected Status. He and his ex-wife have a one-year-old son who was born in Minneapolis. He has held a number of jobs, most recently at Door Dash, to earn money to support his son and ex-wife, who stays at home to take care of their son. At the time of his arrest, Mr. Sosa Celis was living with his girlfriend and her young child. According to Pretrial Services, Mr. Sosa Celis has five traffic offenses for driving without a valid license or driving after revocation, four of which resulted in convictions. He currently has charges pending in Hennepin County for giving a peace officer a false name of another person and driving after revocation. Mr. Sosa Celis has no prior convictions for violent offenses and there is no indication that he has not appeared for court proceedings.

On January 14, 2026, one week after Renee Nicole Good was killed, two unidentified ICE officers with ICE's Enforcement and Removal Operations ("ERO")

(referenced by the Government as ERO #1 and ERO #2), were conducting removal operations in Minneapolis, Minnesota. SA Getsch did not know how old they were, how much law enforcement training and experience they had, how long they had been working for ICE, what directives they had been given in terms of operations in Minneapolis, or how much firearms training they had.

SA Getsch testified that ERO #1 and ERO #2 were in an unmarked vehicle and were chasing Mr. Aljorna until Mr. Aljorna arrived at the 600 block of North 24th Avenue in Minneapolis and crashed into a telephone or light pole or snowbank. Mr. Aljorna got out of the vehicle and ran towards his home. ERO #1 followed him and chased him on foot to the front yard of the residence and observed Mr. Sosa Celis standing on the porch holding a snow shovel. Mr. Aljorna slipped on the ice and fell to the ground. ERO #1 caught up to Mr. Aljorna, grabbed him, and began tussling with him on the ground approximately 10 feet from the residence's front door.

According to SA Getsch, Mr. Sosa Celis then used a snow shovel to strike ERO #1. Mr. Sosa Celis denies hitting anyone with a shovel or broom. SA Getsch testified that at some point, Mr. Aljorna freed himself from ERO #1 and then attempted to hit ERO #1 on the head with the broom while ERO #1 was face-up, on the ground, covering his face with his left hand. ERO #1 sustained a gash to the palm of his hand. ERO #1 then took his service pistol with his right hand and, as Mr. Aljorna and Mr. Sosa Celis fled into the residence, he fired and hit Mr. Sosa Celis in the right hip. According to ERO #1, SA Getsch, and witnesses interviewed by law enforcement, Mr. Aljorna and Mr. Sosa Celis were in the doorway of the residence approximately 10 feet away from ERO #1 when ERO #1 fired

4

his weapon at them.

    Mr. Sosa Celis was taken to the hospital for treatment of his gunshot wound where parts of a bullet were extracted from his upper leg or hip. While at the hospital receiving treatment, he was cooperative. He agreed to be interviewed by the FBI and BCA. He also provided consent to search his phone and provided his cell phone password. According to the FBI, Mr. Sosa Celis told them that he worked as a food delivery driver. He was at the apartment building when he received a call from Mr. Aljorna. Mr. Aljorna told him that he thought ICE was trying to stop his vehicle and Mr. Sosa Celis told Mr. Aljorna to drive to the residence. According to the FBI, Mr. Sosa Celis said that he saw Mr. Aljorna crash the car as ICE was chasing him and saw Mr. Aljorna running toward the residence and the agent on top of him. Mr. Sosa Celis told them that he had a snow shovel in his hands around this time but never used it. According to the FBI, Mr. Sosa Celis said that as he pulled Mr. Aljorna away from the ICE officer through the doorway of the residence and shut the door, he was shot in the leg.

    FBI agents also interviewed Mr. Aljorna, who stated that he called Mr. Sosa Celis while he was fleeing and Mr. Sosa Celis said to go home. Mr. Aljorna also stated that he was tackled by an ICE officer after he slipped on the ice. He was eventually able to slip out of his jacket and ran into the residence. Before he ran into the building, he grabbed a broom by the door and threw it in the direction of the ICE officer. As he ran into the residence, Mr. Aljorna saw Mr. Sosa Celis lock the door and get shot in the leg through the door.

    SA Getsch testified that surveillance video captures some of the incident and shows three individuals in a physical altercation. One individual is initially seen in the front yard

with a shovel, a second individual is seen running toward the residence, and a third individual is seen chasing the second individual. The video also shows a physical altercation followed by one individual laying on the ground and the other two individuals running toward the residence.

FBI agents interviewed the girlfriends of Mr. Sosa Celis and Mr. Aljorna. SA Getsch testified that neither one corroborated ERO #1's claim that he was struck by a broom or that any weapons were used. SA Getsch also testified that the witness who also lived in the building did not corroborate ERO #1's claim that he was struck by a broom or shovel. Finally, SA Getsch testified that the video surveillance footage of events did not corroborate ERO #1's claims that he was struck by an object. SA Getsch confirmed that other than ERO #1's statement, no witness stated that Mr. Sosa Celis attacked ERO #1 or was even in physical contact with him.

## LEGAL STANDARD

The Court reviews a magistrate's detention order *de novo*. *United States v. Maull*, 773 F.2d 1479, 1482 (8th Cir. 1985). When reviewing the magistrate judge's order, the district court makes the same inquiry regarding a defendant's risk of flight and danger to the community as did the magistrate. Nevertheless, "the district court is not required to start over in every case, and proceed as if the magistrate's decision and findings did not exist." *U.S. v. Goree*, 2020 WL 490995 at *3 (D. Minn. Jan. 30, 2020) (quoting *United States v. Koenig*, 912 F.2d 1190, 1193 (9th Cir. 1990)).

The Bail Reform Act of 1984 provides four options for release or detention of a criminal defendant pending trial: (1) release on personal recognizance or upon execution

of an unsecured appearance bond under § 3142(b); (2) release on one or more conditions outlined in § 3142(c); (3) temporary detention to permit revocation of conditional release, deportation, or exclusion under § 3142(d); or (4) detention pursuant to § 3142(e). *See* 18 U.S.C. § 3142(a).

"The statute favors release over detention for the majority of accused persons." *U.S. v. Holloway*, 781 F.2d 124, 125 (8th Cir. 1986). The Eighth Circuit has explained the methodology by which a judge determines the appropriate choice under Section 3142(a) in this way:

> The statutorily mandated progression from one choice to the next is critical: a judicial officer cannot determine that a detention hearing and the possible imposition of pretrial detention is appropriate merely by determining that release on personal recognizance will not "reasonably assure" the defendant's appearance at trial or "will endanger" the community. The judicial officer must also consider whether one of the codified conditions or any combination of the conditions will "reasonably assure" the defendant's appearance and the safety of the community. The wide range of restrictions available ensures, as Congress intended, that very few defendants will be subject to pretrial detention.

*U.S. v. Orta*, 760 F.2d 887, 890-91 (8th Cir. 1985),

In evaluating whether release conditions exist that will reasonably assure the appearance of a defendant at trial and the safety of the community, the court considers the following factors:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including-

7

> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>
> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

Pre-trial detention is authorized when "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community...." *See* 18 U.S.C. § 3142(e)(1). Generally, the Government has the burden of showing "by clear and convincing evidence that no release condition or set of conditions will reasonably assure the safety of the community and by a preponderance of the evidence that no condition or set of conditions ... will reasonably assure the defendant's appearance...." *United States v. Kisling*, 334 F.3d 734, 735 (8th Cir. 2003) (quoting *United States v. Orta*, 760 F.2d 887, 891 (8th Cir.1985)).

## ARGUMENT

The Government's motion should be denied because it has not met its burden of showing that no condition or combination of conditions will reasonably ensure Mr. Sosa Celis's appearance in these proceedings and the safety of the community.

### A. The Nature and Circumstances of the Offense

The Government maintains that Mr. Sosa Celis assisted Mr. Aljorna in evading law enforcement by telling him to drive home, striking ERO #1 with a broom or shovel, and handing Mr. Aljorna a broom after he slipped free from ERO #1's grasp. But the evidence at the hearing demonstrated that none of the witness or the surveillance footage corroborated ERO #1's claim that any objects were used to strike ERO #1. Indeed, SA Getsch testified that other than ERO #1's statement, no witness stated that Mr. Sosa Celis attacked ERO #1 or was even in physical contact with him. Further, telling someone to go home while being chased by armed ICE agents is a common-sense measure of self-protection in the context of what was occurring in Minneapolis one week after Renee Good was killed. The Government's argument that Mr. Sosa Celis was evading law enforcement by fleeing into a house while being shot by ERO #1 is a rather extraordinary claim. Such action probably saved his life. Moreover, evidence presented at the hearing indicated that ERO #1 shot Mr. Sosa Celis when he was in the doorway approximately 10 feet away and after any threat to ERO #1's safety had disappeared, suggesting that ERO #1's use of deadly force was unreasonable and raising questions regarding ERO #1's credibility.

In this context, Mr. Sosa Celis's actions are best viewed as defensive measures to protect his life and safety and that of Mr. Aljorna. The Government's argument that these facts and circumstances pertaining to Mr. Sosa Celis support the conclusion that there is no combination of conditions of release that would reasonably assure his appearance or protect community safety is unavailing. Fleeing inside a house while being shot does not demonstrate one will not show up to court or will endanger others. Recommending a friend

go home while being chased by armed ICE agents is a potentially life-saving idea that does not demonstrate one will not show up to court or endanger others. These life-saving actions are possibly the very reason why Mr. Sosa Celis is alive to face these court proceedings. To say the Government's argument is thin is an understatement.

### B. The Weight of the Evidence

The evidence that Mr. Sosa Celis assaulted ERO #1 is uncorroborated by the surveillance video and witness statements. SA Getsch testified that ERO #1's injury resulted from a strike by a broom but he also testified that Mr. Sosa Celis used a shovel. As stated above in Section A, there are alternative explanations for why Mr. Sosa Celis did what he did that have nothing to do with violating the law and everything to do with self-protection. For these reasons, the evidence may have been sufficient to establish probable cause, but is not strong.

### C. The History and Characteristics of the Defendant

Mr. Sosa Celis has been living in Minnesota for several years. His ex-wife is here. His young son is here. He has close friends in Minneapolis. His entire life is right here and everything he cares about is here. There is no doubt he has strong ties to the community.

Although Mr. Sosa Celis has prior convictions for various traffic-related offenses, he has shown up to court. The Government has not suggested otherwise. Instead, the Government argues that a pending charge in Hennepin County of giving a peace officer a false name after being pulled over for driving with a revoked license demonstrates an act to evade law enforcement detection. But a review of the complaint in *State v. Sosa Celis*, Hennepin Court File No. 27-CR-25-19615, indicates that Mr. Sosa Celis, after giving a

false name, later admitted his real name and "apologized for lying, and stated that he drove because he was trying to provide for his child." After being arrested, Mr. Sosa Celis "again apologized for lying and stated that he was driving to provide for his family, as he is the only one who works." These statements, rather than demonstrating an attempt to evade akin to fleeing the jurisdiction and avoiding court proceedings, demonstrate his challenging financial difficulties. This case remains pending.

The Government insists that Mr. Sosa Celis's immigration status provides a strong incentive for him to abscond from future proceedings. But the Bail Reform Act, which identifies the factors a court must take into account in evaluating whether there are conditions of release that will reasonably assure the appearance of the defendant and the safety of the community, does not include the existence of an ICE detainer. *See U.S. v. Barrrera-Omana*, 638 F. Supp. 2d 1108, 1110 (D. Minn. 2009).

In *Barrera-Omana*, Judge Rosenbaum explained that "the ICE detainer is an externality not under defendant's control. As such, it must be excluded from the detention analytic." *Id*. Judge Rosenbaum reasoned that, "[i]n fine, the government argues that any defendant encumbered by an ICE detainer must be detained pending trial or sentence. This cannot be . . . if the Court accepted the government's argument, Congress's carefully crafted detention plan, set forth in 18 U.S.C. § 3142, would simply be overruled by an ICE detainer. No other factor matters; neither danger to the community nor risk of flight, nor any kind of individualized consideration of a person before the Court. Each, according to the government, has been swallowed by an ICE detainer." *Id*. at 1111. Judge Rosenbaum stated, "The Court must conclude that the risk of flight with which Congress was concerned

11

was not a flight flown or paid for by a federal government agency. The risk of nonappearance referenced in 18 U.S.C. § 3142 has to involve an element of volition . . . [t]he problem here is not that defendant will absent himself from the jurisdiction, but that two Article II agencies will not coordinate their respective efforts. The Executive, in the person of the Attorney General, wishes to prosecute defendant. The same Executive, in the person of the Assistant Secretary of Homeland Security for ICE, may wish to deport him. It is not appropriate for an Article III judge to resolve Executive Branch turf battles." *Id*. at 1111-12. *See also U.S. v. Pizana-Reyna*, 09-337 (PAM) (observing that "[t]he Government's motion puts the Court in the uncomfortable role of refereeing this dispute between two executive agencies" and concluding that release was appropriate in the face of an ICE detainer); *U.S. v. Rembao-Renteria*, 2007 WL 2908137 at *3 (D. Minn. Oct. 2, 2007) (ordering the release of the defendant and concluding, "In the Court's view, Rembao-Renteria presents an example of a person for whom the certainty of deportation does not translate into the certainty of flight.").

Based on the reasoning and case law of this Court, the Government's argument that Mr. Sosa Celis will abscond due to his immigration status is unavailing. The risk of absconding must involve an act of volition, and other than the detainer, the Government has pointed to no incentive to flee, particularly in light of Mr. Sosa Celis's ties to the community, including his young son and family. This is not like the presumptive detention case, *U.S. v. Aceves-Lopez*, 25-CR-0387 (PJS/DTS) (ECF #104), cited by the Government, where the defendant participated in a long-running drug trafficking conspiracy and was charged with conspiracy to distribute 500 or more grams of methamphetamine, which

12

carries a maximum sentence of life. In that case, the Court concluded that the defendant did not have any reason not to flee. Here, by contrast, Mr. Sosa Celis has every reason to see this case through given the less than compelling evidence against him, the limited nature and scope of his actions, the possibility that unreasonable force was used against him when he was shot by ERO #1, his ties to the community, and his steadfast determination to create a better life for his son here in the U.S.

### D. The Nature and Seriousness of the Danger to Any Person or the Community Posed by the Defendant's Release

Other than the offense charged, there is nothing in Mr. Sosa Celis's history indicating that he poses a danger to any person or the community. Mr. Sosa Celis does not have any history of violent offenses. Indeed, this encounter with ERO agents was extraordinarily unique. It was also traumatizing. One of the conditions imposed by Judge Micko was that he have no contact with immigration officials and Mr. Sosa Celis has absolutely no interest in doing so in light of this experience and the gunshot wound he sustained.

### CONCLUSION

For all the reasons set forth above, Mr. Sosa Celis urges the Court to conclude that there are a combination of conditions that would reasonable assure his appearance and public safety, including the conditions imposed by Judge Micko. The Government has not met its burden and the Court should reject the pending motion.

|  |  |
|---|---|
| Dated:  January 27, 2026 | **SAPIENTIA LAW GROUP, PLLC** |
|  | s/Robin M. Wolpert |
|  | Robin M. Wolpert (#0310219) |
|  | 120 South Sixth Street, Suite 100 |
|  | Minneapolis, MN 55402 |
|  | Phone: 612-756-7100 |
|  | Fax: 612-756-7101 |
|  | robinw@sapientialaw.com |
|  | *Attorneys for Defendant* |
|  | *Julio Cesar Sosa-Celis* |